(62 App. Div. 345.)

### DOLAN v. BURDEN IRON CO.

(Supreme Court, Appellate Division, Third Department. June 28, 1901.)

INJURIES TO EMPLOYE — RAILROAD CARS — DEFECTIVE COUPLING — PRIVATE SWITCH YARD.

   Plaintiff had his hand crushed while coupling cars in defendant manufacturing company's switch yard. Cars of different roads came to the yards, some having drawbars higher than others, making coupling more dangerous, but plaintiff was familiar with this fact. The drawheads of the cars which caused the injury were of different heights, but there was no defect in the coupling apparatus of either, and plaintiff in fact made the coupling successfully, but had his hand injured while so doing. *Held* not to show negligence on the part of defendant entitling plaintiff to damages.

Appeal from trial term, Rensselaer county.

Action by John Dolan against the Burden Iron Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

William J. Roche, for appellant.
J. Newton Fiero, for respondent.

CHASE, J.   The defendant is a corporation engaged in the manufacture of bar iron, horse shoes, and other products, at Troy, N. Y. For the purpose of conducting its business, coal, ore, and other materials are obtained in different parts of the country, and transported to Troy on cars of various railroad corporations.   For the purpose of receiving and handling such cars and materials, the defendant has a series of railroad tracks connected with the tracks of the New York Central & Hudson River Railroad Company.   The New York Central & Hudson River Railroad Company back such loaded cars into the yard of the defendant.   The defendant has an engine which it uses on its tracks, in charge of a locomotive engineer employed by it. It also employs a yard master and two brakemen.   The cars so delivered to it are weighed, and taken to different parts of its plant and unloaded.   The empty cars are again weighed, and they are either refilled with freight, and as so refilled, or as empty cars, are taken from the yard of the defendant, and backed onto side tracks of the New York Central & Hudson River Railroad, where they are taken by said company.   In October, 1895, the plaintiff was employed by the defendant as one of said brakemen, and continued in such service until the time of the accident mentioned in the complaint.   His duties consisted chiefly in coupling and uncoupling cars. He had had experience in such work prior to his employment by the defendant.   He was familiar with the operation of coupling appliances, and of the danger incident to the same.   All kinds of cars came to the defendant's premises.   They varied in size and build. They varied in size, build, and character of the coupling appliances, including the drawheads, and the openings in the drawheads.   There was no uniformity in the height of the drawheads on the cars of the various companies.   The difference in their height was as much as two or three inches, and such difference was plainly noticeable.   The defendant was familiar with the use of a coupling stick.   Evidence that previous to the accident plaintiff was told by an employé of the advisability and safety of using a coupling stick, and evidence that coupling sticks were in plain sight on the engine, at the scale house, and about the yard was received, and not contradicted.   The cars of the Western New York & Pennsylvania Railroad Company and of the Fall Brook Railroad Company were frequently in the defendant's yard, and the drawheads of the Western New York & Pennsylvania cars were generally lower than those on the cars of the Fall Brook road.   On the afternoon of the 1st day of February, 1896, after the plaintiff had been engaged most of the day with his fellow brakeman in coupling and uncoupling cars that were being weighed and unloaded in the usual way, he started southerly along the east side of a number of cars attached to, and backed by, the defendant's engine. The cars so attached to the engine consisted, first, of seven cars of the Delaware & Hudson Canal Company, and connected with them on the south were three cars of the Western New York & Pennsylvania Company.   The plaintiff walked rapidly or ran with the train by

the side of the cars for the purpose of reaching the point where they would meet two cars that were standing further south on the same track, and which cars were the property of the Fall Brook Company, and for the purpose of there making the coupling between the most southerly car of the moving train and the most northerly of the two cars so standing on the track. In the drawhead of the southerly car of the moving train, which was a car of the Western New York & Pennsylvania Company, was a link ready for insertion in the drawhead of the standing car. When the cars approached within about three feet of one another, the plaintiff stepped in between them for the purpose of making the coupling. He says the link and everything appeared to be all right. He took hold of the link to enter the same into the drawhead of the standing car, and his hand was caught and to some extent crushed, and he received the injuries of which he complains in this action. Plaintiff says that the drawhead of the moving car appeared to him to be three or four inches lower than the drawhead of the standing car. He further says that as he ran along by the side of the cars he looked for inspector's chalk marks calling attention to any defects in the cars, but did not discover any.

The defendant did not employ any one specially to inspect the cars that came into its yard. The plaintiff says that Lawlor, his fellow brakeman, and himself, were the only ones he knew of to inspect and examine the cars. Lawlor is not now in the defendant's employ. He appears as a witness for the plaintiff, and says that he saw the cars after the accident, and that one of the bolts holding the strap on which the drawhead rested on the Western New York & Pennsylvania car was broken, allowing the strap holding the drawhead and the drawhead to sag, so that it was four or five inches lower than the drawhead of the Fall Brook car. Evidence was received which the defendant claims demonstrates beyond contradiction that the evidence of Lawlor in regard to the drawhead sagging is not true. When the couplings are in proper repair, and the cars come together, the drawheads actually strike, and the jar causes the pin in the drawhead of the car to be connected to drop down through the link, thus fastening the cars together. At the time of the accident the drawheads of the cars actually came together. They did not pass one another in any way, but the link passed into the socket of the Fall Brook car drawhead, and was caught by the pin, and the cars were actually taken from the yard of the defendant, and delivered to the New York Central & Hudson River Railroad, with the coupling that was made at the time the accident occurred. The drawheads were some six or eight inches deep, and eight or ten inches wide, and the openings therein about five inches square, so that they could not have passed one another, even if one of them had sagged the maximum amount claimed by the plaintiff. The link was about one foot in length. We may assume for the purposes of this opinion that it was the defendant's duty to inspect the cars when they came upon its premises, and that the drawhead of the Western New York & Pennsylvania car, by reason of the alleged defect in one of the bolts holding the strap on which it rested, sagged prior to the accident, as

claimed by the plaintiff. It was necessary for the plaintiff to establish that the alleged defect in the drawhead of which he complains, or some other defect attributable to the defendant, was the proximate cause of plaintiff's injury.

The drawhead weighs from 120 to 200 pounds, exclusive of the attachments. It cannot be lifted without using considerable strength. Sometimes a piece of wood is put under the drawhead, and two men one on either side of the car then lift it up to its place. Lawlor testifies that when the drawhead is down it makes the coupling hard, but in explaining why it makes the coupling hard he says:

"Because it was hard to lift the link up. You had to lift it up in that shape. If that didn't go in there, it was only just taking chances that it would go in there. and if you didn't it would go down under, and it would go so quickly it was liable to snap your hand. If it went in there it was all right, but if it didn't it would glance off, and your hand was liable to be catched."

In this case the link did go in the drawhead of the standing car, and consequently was in the condition that the witness described as all right. Another witness, in speaking of coupling cars when one of the drawheads has sagged, calls it more dangerous than an ordinary coupling, but his explanation is as follows:

"Because he has to have his whole hand there and all his strength is there. He can't lift it with a couple of fingers. He has got to get hold of it with his whole hand. A good many people lift up with their knee and all the drawbar."

The plaintiff does not claim that he attempted to lift the drawhead. In answer to questions he testifies as follows:

"Q. Did you put your hand at all upon the drawbar of the Fall Brook car? A. Why, no; except when it got smashed in there. Q. Did you put your hand at all upon the drawbar of the W. N. Y. car? A. No; I don't believe I did. I took hold of the link when it was caught between them."

The hand was caught while plaintiff was lifting the link. In his testimony he says:

"All I had to was to reach for the link and lift it up, and in doing that, that is where my hand got caught. * * * Q. What did you do when you got in there? A. I raised the link up, and it entered. It struck the bumper; that is all I know about it. I came near falling under the train. I got caught. Q. You raised the link up, and it struck the bumper? A. Yes, sir. Q. Where was your hand? A. I was holding up the link. My hand was holding up the link. * * * Q. What do you mean by the bumpers? A. The drawbars. * * * Q. When your hand was caught, did you have hold of the link between the two drawbars? A. I couldn't say that. The last I could really see was, I was raising up the link, and the hand was smashed. Q. While in the act of raising up the link? A. Yes, sir. Q. The drawbars came together while you were in the act of raising the link? A. Yes, sir."

In raising the link to enter a drawhead, when they are on the same level, the hand must be withdrawn instantly, or it will be caught. At any time when a brakeman uses his hand to lift the link, and delays a sufficient length of time to allow the car to proceed six or eight inches, it will catch the hand. The testimony offered in this case, showing that the coupling of cars where one of the drawheads has sagged is more dangerous than an ordinary coupling, is based upon

the fact that it is necessary for the brakemen to raise the drawhead that has thus sagged. There is no claim that the defendant did, or attempted to do, anything of the kind. No evidence has been offered to show that the insertion of a link at an increased angle materially increases the danger. The evidence does not show that the sagging of the drawhead was the proximate cause of the injury to the plaintiff. Plaintiff claims that the Fall Brook car did not have a grab iron at the end of the car. The testimony produced by the plaintiff relating to the purpose of a grab iron and as to its value in protecting a brakeman is as follows:

"When you are between the cars, if you ain't got hold of something, why the cars don't stop the minute they come together, because the minute they come together they hit each other, and the car goes away, and if you don't have something to get hold of it will either throw you down, or you have got to run along after it, so if a thing is there that you have got hold of you can walk along after the car."

This action is not brought by the plaintiff to recover for injuries by reason of his being thrown down or run over by the cars. Unless the defendant was negligent, and such negligence was the proximate cause of the accident, it is not liable. We do not mean to hold that the failure to maintain a grab iron may not, under some circumstances, be negligence upon which an action might be sustained. Recovery in actions against railroad corporations by reason of defective drawheads is not unusual, but in every case cited by the plaintiff where a recovery has been upheld evidence has been produced which fairly sustains the conclusion that the negligence complained of was the proximate cause of the accident.

Coupling cars is a dangerous business, and when a brakeman uses his hand to raise the link it will be caught, unless it is removed quickly, and before the drawheads come together. The plaintiff was aware of the ordinary danger in coupling cars, and the risk was an incident to the business, assumed by him. The record shows that the plaintiff attempted to and did in fact couple these cars, and that he failed to withdraw his hand in time to prevent the injury, and the defendant is not liable therefor.

Judgment and order reversed. New trial granted, costs to appellant to abide the event. All concur.